**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
KIMBERLY RODRIGUEZ

Plaintiff,

**REPORT AND RECOMMENDATION**

-against-

**22-CV-5400 (JMA) (ST)**

NEW YORK BARIATRIC GROUP, LLC, LONG ISLAND MINIMALLY INVASIVE SURGERY, P.C. d/b/a/ NEW YORK BARIATRIC GROUP, NYBG MANAGEMENT AGGREGATOR, LLC, NYBG HOLDINGS, LLC, DR. SHAWN GARBER M.D. and VIJAY BACHANI,

Defendants.
---------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

Before the Court is a motion by Defendants to dismiss Plaintiff's Complaint on grounds of *forum non conveniens*. Kimberly Rodriguez ("Plaintiff") brought this action against New You Bariatric Group, LLC, Long Island Minimally Invasive Surgery, P.C. d/b/a/ New York Bariatric Group, NYBG Management Aggregator, LLC, NYBG Holdings, LLC, Dr. Shawn Garber M.D., and Vijay Bachani ("Defendants") alleging several federal and state employment discrimination claims and a breach of contract claim. The motion was referred to this Court for a Report and Recommendation by the Honorable Joan M. Azrack. For the reasons set forth below, the Court respectfully recommends that Defendants' motion to dismiss be DENIED, and that Defendants' request for sanctions be DENIED.

**BACKGROUND**

On April 8, 2021, Plaintiff received, and signed, an employment offer from Defendant New You Bariatric Group, LLC ("New You"), the details of which were memorialized in an offer letter

("Offer Letter") bearing New You's logo.[1] Defs.' Ex. A, ECF No. 14-3. The Offer Letter stated that Plaintiff's employment would be "under the following terms and conditions" before detailing various terms, such as Plaintiff's compensation, which included a provision that Plaintiff would "receive incentive units that w[ould] provide [Plaintiff] the ability to earn up to approximately 0.15% of the fully diluted common equity value of the Company."[2] *Id.* at 1–2. The Offer Letter further provided that "[t]he details of the equity grant will be given to you in a separate equity grant agreement letter." *Id.* at 2. The Offer Letter also contained a paragraph entitled "Choice of Law and Forum" which provides as follows:

> The parties agree that (i) this Agreement and all matters concerning your employment with the Company and/or the termination of such employment (except as otherwise may be provided in writing signed by you and an authorized representative of the Company) shall be governed and construed by and in accordance with the laws of the State of New York, without reference to its principles of the conflicts of laws, and (ii) any dispute concerning or arising out of this Agreement and such other matters shall be tried exclusively in an appropriate state or federal court in Nassau County, New York.

*Id.* at 2–3. Finally, the Offer Letter stated that Plaintiff's "employment and continued employment [wa]s conditioned on [Plaintiff] agreeing to the terms and conditions of this letter." *Id.* at 3.

Four days later, on April 12, 2021, Plaintiff executed an agreement with New You entitled "Confidentiality, Nondisclosure, and Assignment of Inventions Agreement," (hereinafter "Confidentiality Agreement"), which also had New You's logo. Defs.' Ex. B, ECF No. 14-4. In a section entitled "Miscellaneous," the Confidentiality Agreement states:

---

[1] The Offer Letter is dated April 8, 2020, but this appears to be a typographical error. *See* Defs.' Ex. A 1. Both parties' briefs state multiple times that the offer was extended on April 8, 2021. Mem. Law Supp. Defs.' Mot. Dismiss ("Defs.' Mem.") 3, ECF No. 14-1; Compl. ¶ 26, ECF No. 1; Pl.'s Mem. Law Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") 5-6, 8, 11, ECF No. 15. Page number pincites throughout this Report and Recommendation are to the ECF page number in the top right corner of each page.

[2] The Offer Letter defines "Company" as Defendant New You Bariatric Group, LLC, and thus this clause presumably means that Plaintiff would be granted shares of Defendant New You. Defs.' Ex. A 1. However, the Equity Grant Agreement that Plaintiff received several weeks later granted Plaintiff shares of Defendant NYBG Management Aggregator, LLC. Defs.' Ex. C 1, ECF No. 14-5. The discrepancy between the two is not explained by the parties.

> This agreement shall be governed by and construed in accordance with the laws of the State of New York, regardless of conflict of laws principles. Any action arising hereunder shall be brought before the State Courts of New York, sitting in Nassau County, to which exclusive jurisdiction both parties hereto hereby agree to submit.

*Id.* at 6. The Confidentiality Agreement also states as follows: "This Agreement constitutes the entire agreement of the parties and supersedes any prior agreements between them with respect to the subject matter hereof." *Id.* Finally, it states that "[t]his Agreement does not constitute nor create an employment agreement or guaranty of continued employment." *Id.* at 7.

On May 3, 2021, Plaintiff began working for New You. Compl. ¶ 46, ECF No. 1. Several weeks later, on May 24, 2021, Plaintiff executed an "Equity Grant Agreement" with Defendant NYBG Management Aggregator, LLC, and Defendant NYBG Holdings, LLC (hereinafter "Equity Grant Agreement"). Defs.' Ex. C 1, ECF No. 14-5. The Equity Grant Agreement detailed the terms by which Plaintiff would receive Class C Units and Class D Units of the "Company," with the "Company" being defined in the agreement as Defendant NYBG Management Aggregator, LLC. *Id.* The Equity Grant Agreement states that Plaintiff "is an employee of [NYBG Holdings, LLC] or one of its Subsidiaries."[3] *Id.* The agreement stipulates that, should Plaintiff's employment be terminated, any granted units would be forfeited. *Id.* at 3–4. After detailing the terms governing the granting of units, the Equity Grant Agreement provided as follows:

> This Agreement . . . embodies the complete agreement and understanding among the parties hereto with respect to the subject matter provided for herein and supersedes and preempts any prior understandings, agreements or representations by or among the parties hereto, written or oral, which may have related to the subject matter hereof in any way, including any term sheet or letter of intent relating to the subject matter hereof.

[3] The Complaint and the parties' briefs do not clarify the relationships between New You, NYBG Management Aggregator, and NYBG Holdings. However, Plaintiff was employed by New You, not NYBG Holdings. Defs.' Ex. A 1. Given the language of the Equity Grant Agreement, the Court presumes that New You is a subsidiary of NYBG Holdings.

*Id.* at 8. Finally, in a paragraph entitled "Governing Law and Jurisdiction," the Equity Grant Agreement provided as follows:

> All issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement and the exhibits hereto shall be governed by, and construed in accordance with, the laws of the State of Delaware, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware. Each of the parties hereto submits to the exclusive jurisdiction and venue of any state or federal court sitting in New York, New York, in any action or proceeding arising out of or relating to this Agreement and agrees that all claims in respect of the action or proceedings may be heard and determined in any such court and hereby expressly submits to the personal jurisdiction and venue of such court for the purposes hereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum.

*Id.* at 8–9.

On January 13, 2022, New You terminated Plaintiff's employment. Compl. ¶ 127; Defs.' Mem. 11. Thereafter, Plaintiff brought this action alleging two counts of discrimination and retaliation under Title VII, three counts of discrimination, retaliation, and hostile working environment under New York State Human Rights Law ("NYSHRL"), and one count of common law breach of contract alleging that Defendants New You, Dr. Garber, and Vijay Bachani wrongfully terminated her, causing an improper termination of, and thus a breach of, the Equity Grant Agreement. Compl. 15–19. Defendants moved to dismiss under the doctrine of *forum non conveniens*, arguing that the forum selection clauses in the Offer Letter and Confidentiality Agreement mandated that the five employment law claims be brought in Nassau County state court, and that the forum selection clause in the Equity Grant Agreement mandated that the breach of contract claim be brought in state or federal court in New York County. Defs.' Mem. 12–13.

The Honorable Joan M. Azrack referred the motion to me for this Report and Recommendation. *See* Referral Order dated Oct. 18, 2023.

**LEGAL STANDARD**

The proper procedural avenue to enforce a forum selection clause in a contract is to bring a motion under the doctrine of *forum non conveniens*. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 52, 59–61 (2013). When the forum selection clause points to an alternate federal district, the motion is brought as a motion to transfer under 28 U.S.C. § 1404(a), which codifies the doctrine of *forum non conveniens* for federal courts and permits transfer in lieu of dismissal. *Id.* at 59–60 (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). When a forum selection clause points to a state or foreign (*i.e.*, nonfederal) forum, the proper procedural avenue is to bring a motion to dismiss under the residual, common law doctrine of *forum non conveniens*. *Id.* at 60–61 (citing *Sinochem*, 549 U.S. at 430).

In deciding a motion to dismiss for *forum non conveniens* based upon a forum selection clause, a district court may rely on the pleadings as well as affidavits submitted in support of the motion to dismiss, though the court may order limited discovery. *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014). However, if there are disputed material facts, the court must hold an evidentiary hearing to provide the plaintiff the opportunity to be heard if it is to resolve factual disputes in favor of the defendant. *Id.* at 216–17 (citing *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997)). Here, the parties do not dispute that they executed the agreements, nor the language the agreements contain. Instead, the parties challenge the interpretation of that language, which is a question of law. *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 75 (2d Cir. 2009). Thus, the Court can decide the motion to dismiss on the pleadings and affidavits.

Generally, when assessing a *forum non conveniens* motion, absent a forum selection clause, a district court must assess "(1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the

private and public interests implicated in the choice of forum." *Rabinowitz v. Kelman*, 75 F.4th 73, 80 (2d Cir. 2023) (quoting *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019)); *see also Atl. Marine*, 571 U.S. at 62–63, 62 n.6. "Factors relating to the parties' private interests include 'practical problems that make trial of a case easy, expeditious and inexpensive,' such as ease of access to proof and the cost of obtaining attendance of witnesses." *Rabinowitz*, 75 F.4th at 80 n.5 (citation omitted). Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6 (alteration in original) (citation omitted). After weighing these factors, a district court would consider whether transfer to another federal forum under § 1404(a), or dismissal in favor of an alternate nonfederal forum under the residual common law doctrine, would be more convenient to the parties and promote the interests of justice. *Id.* at 62–63.

However, in a case with a valid forum selection clause, "[t]he calculus changes," because "enforcement of [a] valid forum-selection clause[ ], bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* at 63 (citation omitted). Thus, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* (citation omitted). To that end, the Supreme Court in *Atlantic Marine* held that a valid forum selection clause modified the preexisting *forum non conveniens* test in three ways: (1) the plaintiff's choice of forum should be given no weight and, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer[4] to the . . .

[4] While *Atlantic Marine* involved a motion to transfer to an alternate federal forum under § 1404(a), the Court noted on several occasions that § 1404(a) simply codifies the common law doctrine of *forum non conveniens*, and that motions to dismiss to enforce forum selection clauses pointing to nonfederal fora should be analyzed using the same test. *Atl. Marine*, 571 U.S. at 61, 66 n.8. The Court reasoned that "caution [regarding whether dismissals cause harsh results to plaintiffs] is not warranted . . . when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause." *Id.* at 66 n.8.

[bargained-for forum] is unwarranted"; (2) the private interest factors should be weighed entirely in favor of the preselected forum and thus, in effect, only the public interest factors should be considered; and, (3) if a transfer is granted, the transferee district will not apply the original forum's choice-of-law rules. *Id.* at 63–64. In sum, *Atlantic Marine* announced a "modified *forum non conveniens* framework" to be used when a forum selection clause is at play. *Rabinowitz*, 75 F.4th at 82. The practical result is that, after *Atlantic Marine,* the burden of proof rests on the plaintiff and only public interest factors can be considered. *Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, 575 F. Supp. 3d 445, 465–66 (S.D.N.Y. 2021); *Fasano v. Li*, 47 F.4th 91, 101 (2d Cir. 2022).

Prior to *Atlantic Marine*, the Second Circuit developed a four-prong test based on the Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) to assess whether to enforce forum selection clauses. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383–84 (2d Cir. 2007). For the first three steps of the enforceability test, courts evaluate:

> (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause is "mandatory or permissive, i.e., . . . whether the parties are required to bring any . . . dispute to the designated forum or simply *permitted* to do so"; and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause."

*Martinez*, 740 F.3d at 217 (quoting *Phillips*, 494 F.3d at 383) (emphasis in original). If these three prongs are met, the forum selection clause "is presumptively enforceable," and the burden of proof shifts to the party resisting enforcement. *Id.* (quoting *Phillips*, 494 F.3d at 383). At step four, the resisting party can rebut the presumption "only by (4) 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *Phillips*, 494 F.3d at 383–84). To show, under the fourth prong, that enforcement of a presumptively valid forum selection clause would be unreasonable or

unjust, or that the clause is invalid, the resisting party must show one of the following four *Bremen* factors, which are effectively subparts of prong four, otherwise known as "[t]he *Bremen* test":

> "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum" in which suit is brought; "or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court."

*Id.* at 221, 228 (quoting *Phillips*, 494 F.3d at 392). After *Atlantic Marine,* the Second Circuit has continued to apply the four prong enforceability test against the backdrop of the modified *forum non conveniens* framework. *Id.* at 217, 219 (noting that the Supreme Court "did not address the extent to which the [*Atlantic Marine*] test for invalidating a forum selection clause pointing to another federal district court resembles the test developed under *Bremen* for invalidating a forum selection clause pointing to a nonfederal forum"); *Fasano v. Yu Yu*, 921 F.3d at 335–36; *Rabinowitz*, 75 F.4th at 81. As the enforceability test's burden-shifting analysis already places the burden on the party resisting enforcement, *Martinez,* 740 F.3d at 217 (quoting *Phillips*, 494 F.3d at 383), the only remaining prongs of the *forum non conveniens* test are the private interest factors and the public interest factors.[5] *Atl. Marine*, 571 U.S. at 63–64. Courts in this circuit often apply both the enforceability test and the modified *forum non conveniens* factors in turn. *See, e.g.*, *WindServe Marine*, 2021 WL 5749827, at *6–7.

[5] While the Supreme Court in *Atlantic Marine* held that private interest factors should not be considered, the Second Circuit "has not yet decided whether" *Atlantic Marine*'s "categorical waiver" of the private interest factors "applies when the contested transfer is to a foreign jurisdiction, rather than another federal district" because of the hardship to plaintiffs caused by dismissal. *LVAR, L.P. v. Bermuda Com. Bank Ltd.*, 649 F. App'x 25, 27 (2d Cir. 2016); *Martinez*, 740 F.3d at 227–30 (quoting *Atl. Marine*, 571 U.S. at 64). However, because the Supreme Court rejected this consideration and noted several times in *Atlantic Marine* that motions to dismiss in favor of nonfederal fora should be analyzed the same way, *Atl. Marine*, 571 U.S. at 61, 66 n.8, some courts in this circuit continue to reject the private interest factors outright. *See, e.g.*, *WindServe Marine, LLC v. US Workboats, LLC*, No. 20CV532, 2021 WL 5749827, at *6 (E.D.N.Y. Apr. 16, 2021).

## DISCUSSION

Defendants' motion to dismiss effectively bifurcates Plaintiff's Complaint. Defendants first move to dismiss the first five claims (the "employment law claims"), arguing that Plaintiff agreed to forum selection clause(s) that require those actions to be brought in Nassau County state court. Defs.' Mem. 12–13, 16–19. Defendants' argument seemingly presumes that those five actions have only been brought against four of the six defendants—the people and entities related to Defendant New You, the subsidiary company that directly employed Plaintiff (a group which Defendants call the "NEW YOU Defendants"). *See* Defs.' Mem. 17, 20. Defendants then move to dismiss *or* transfer the breach of contract action, which Defendants argue has been brought against two of the six defendants who Defendants have named the "Private Equity Defendants" (the parent company, NYBG Holdings, LLC, and an entity affiliated with the parent, NYBG Management Aggregator, LLC[6]), arguing that Plaintiff agreed to a forum selection clause requiring that action to be brought in state or federal court in New York County. Defs.' Mem. 3, 13, 17, 20-21. To this end, Defendants argue that "Plaintiff lumped her employment claims against the NEW YOU Defendants with her separate and distinct claims against the Private Equity Defendants."[7] Defs.' Mem. 20. In response, Plaintiff argues that the Eastern District of New York is the preselected forum for the employment law claims, and that, because there are common questions of fact, interests of judicial efficiency militate in favor of trying the breach of contract claim together with the employment law claims. Pl.'s Opp'n 5-14.

---

[6] The relationships between the corporate entities are not explained in the relevant contract or by the parties.

[7] To the extent that this may be an argument for improper joinder of claims or parties, Defendants do not use the word "joinder," cite to any of the Federal Rules of Civil Procedure, or present any caselaw related to joinder, and the Court will not address it. It should be noted that Plaintiff's Complaint does not distinguish specific counts as being brought against specific Defendants and, in fact, alleges that Plaintiff was jointly employed by both those categorized as "NEW YOU Defendants" and those categorized as "Private Equity Defendants," relying on the terms of the respective agreements in support of this contention. Compl. ¶¶ 26–31.

As an initial matter, however, the parties' briefs do not clearly explain or characterize many of the points presented in support of either of the above arguments, leaving the Court to infer these points through implication. Moreover, neither of the parties address the applicable law governing the questions presented, instead devoting substantial argument to law governing ancillary, undisputed questions. For example, while Defendants devote considerable argument to the enforceability standards for forum selection clauses, both the enforceability test and the modified *forum non conveniens* framework presume, as a threshold matter, that one of the parties is attempting to violate the applicable forum selection clause and pursue the action in a forum that was not preselected. *Martinez*, 740 F.3d at 217 (listing the four prongs of the enforceability test, including "(1) whether the clause was reasonably communicated to *the party resisting enforcement* . . . " and "(2) whether . . . *the designated forum*" is mandatory or permissive (emphasis added) (internal quotations omitted)); *Atl. Marine*, 571 U.S. at 63 (ruling that, under the modified *forum non conveniens* framework, the plaintiff, "as the party *defying the forum-selection clause*, . . . bears the burden of establishing that transfer *to the forum for which the parties bargained* is unwarranted" (emphasis added)). By contrast, Plaintiff here argues, with respect to the employment law claims, that the Eastern District of New York *is* the forum for which the parties bargained, while Defendants argue that the Eastern District of New York *is not* the forum for which the parties bargained. Pl.'s Opp'n 6, 8-9; Defs.' Mem. 11, 17, 19. This presents a threshold question which precedes the application of either test, because if there has been no violation of the clause (i.e., if the action has already been filed in the correct forum), there is no need to decide whether to enforce the clause. *See, e.g.*, *Yakin*, 566 F.3d at 75 (describing the question of whether a forum selection clause contains ambiguity with respect to the forum it selects as "a threshold question of law"); *APR Energy Ltd. v. Greenhill & Co., LLC*, 220 F. Supp. 3d 427, 429 (S.D.N.Y. 2016)

("Although styled as a *forum non conveniens* motion, the dispositive issue here is one of contract interpretation: Which forum-selection provision governs the claims in this case . . . ?"); *Harrington v. Crater*, No. 17CV2343, 2017 WL 4621618, at *3 (E.D.N.Y. Oct. 7, 2017) ("As the forum selection clause clearly contemplates allowing venue in this very courthouse, the Court need not address whether the action should be dismissed under the residual doctrine of *forum non conveniens*.").

The instant motion presents two main threshold questions. First, this motion raises the question of which forum selection clause(s) this Court should choose to apply in a case where there are multiple contracts between the parties, all stemming from a single event (the hiring of an employee), all of which contain different, mandatory forum selection clauses. Second, this motion raises the question of the standard that courts should apply to interpret ambiguities in a forum selection clause to determine whether an action has already been filed in the appropriate forum. For the former, neither of the parties discuss the applicable standard nor cite to any cases that do. For the latter, neither of the parties discuss the applicable standard, and while they do cite to one case that does, they discuss a portion of that case which applies the standard without reviewing the standard being applied. Thus, for clarity, the Court will address the parties' arguments in the bifurcated manner in which they were raised, by first addressing Defendants' motion to dismiss the five employment law claims, and then addressing Defendants' motion to dismiss *or* transfer the breach of contract claim, and will begin each analysis by summarizing the Court's understanding of the parties' assertions and the relevant questions presented. For the reasons that follow, the Court respectfully recommends that Defendants' motion to dismiss the employment law claims be DENIED, and that Defendants' motion to dismiss or transfer the breach of contract claim be DENIED, as all of the actions have been properly brought in the Eastern District.

## I. Plaintiff's Employment Law Claims Have Been Properly Brought in the Eastern District.

For the motion to dismiss the employment law claims, Defendants first analyze the language of the Offer Letter at length, and then analyze the language of the Confidentiality Agreement at length, in two paragraphs that mirror one another. Defs.' Mem. 17-18. Thereafter, Defendants argue that "the forum selection *clauses* contained in the *Agreements* underlying Plaintiff's employment . . . . designat[e] Nassau County as the exclusive [forum] to hear disputes relating to Plaintiff's employment," and that they should be enforced. Defs.' Mem. 18-19 (emphasis added); *see also* Defs.' Mem. 17 ("[T]his Court should dismiss Plaintiff's Complaint as the *Employment Agreements* executed between Plaintiff and NEW YOU dictate that the Nassau County Supreme Court shall have exclusive jurisdiction[8] over all disputes relating to Plaintiff's employment." (emphasis added)). While Defendants state that the two contracts are "the Agreements underlying Plaintiff's employment" and that they were both executed with the "NEW YOU" Defendants, Defendants do not otherwise explain why the argument analyzes the text of two ostensibly separate agreements together, nor do Defendants provide any standards governing when multiple contracts should, and should not, be interpreted together. Defs.' Mem. 17–19. Notably, the two agreements were not executed on the same day, Pl.'s Opp'n 6 ("On or about April 8, 2021, Plaintiff signed the offer."), do not contain the same forum selection language,[9] and, while

[8] While both parties' briefs use the term "jurisdiction" in the sense of whether a court is vested or divested of the power to hear a case, the Court notes that forum selection clauses and the doctrine of *forum non conveniens* are not jurisdictional in nature, because a forum selection clause does not deprive a court of the power to hear a case. *Rabinowitz*, 75 F.4th at 79 (first quoting *New Moon*, 121 F.3d at 28; and then quoting *M/S Bremen*, 407 U.S. at 12). Instead, "jurisdiction" in the forum selection clause context should only be used to distinguish between federal court and state court as parallel jurisdictions (*i.e.*, entities or systems). Moreover, while the parties often use the term "venue," a forum selection clause does not render venue in a district improper. *Atl. Marine*, 571 U.S. at 56–57 (noting that this usage "improperly conflates the special statutory term 'venue' and the word 'forum'"). The Court has modified quotations from the parties' briefs to correct the terminology when grammatically logical.

[9] The Offer Letter's forum selection clause states that "any dispute concerning or arising out of this Agreement and such other matters shall be tried exclusively in an appropriate state or federal court in Nassau County, New York." Defs.' Ex. A 3. The Confidentiality Agreement's forum selection clause states that "[a]ny action arising hereunder shall be brought before the State Courts of New York, sitting in Nassau County, to which exclusive jurisdiction both

they were both broadly executed in connection with Plaintiff's acceptance of employment, they apparently address different subject matter.

Defendants' argument also discusses the Second Circuit's decision in *Yakin v. Tyler Hill Corp.*, a case in which a forum selection clause mandated that the forum for any disputes "shall be in Nassau County, New York." 566 F.3d at 74. In other words, the clause in *Yakin* simply selected a county but made no mention of state or federal court. *Id.* at 74–76. There, the Second Circuit held that the clause mandated state court because it explicitly selected Nassau County and there was no federal courthouse in Nassau County. *Id.* at 76. Relying on *Yakin*, Defendants argue that "the effect of a forum selection clause designating a county where no federal court sits is to divest federal jurisdiction over the dispute." Defs.' Mem. 17. As the Confidentiality Agreement specifically requires a state forum, Defendants would not need to rely on *Yakin* for the purpose of interpreting its language. Instead, the only forum selection clause that selects a county but arguably leaves open the question of whether the forum can be state or federal is that of the Offer Letter. Therefore, Defendants presumably present *Yakin* for the purpose of interpreting the Offer Letter.

Thus, the Court understands Defendants' motion to dismiss the employment law claims to present two main points: first, that the Offer Letter's forum selection clause, standing alone, should be held under the Second Circuit's precedent in *Yakin* to exclusively select Nassau County state court, because it selects a geographic area but is open-ended with respect to state and federal court; and second, that even if the Offer Letter does not, standing alone, select Nassau County state court as the exclusive forum, the language in the Confidentiality Agreement clarifies any ambiguity with respect to the parties' intended forum for employment disputes, and thus the two clauses should

---

parties hereto hereby agree to submit." Defs.' Ex. B 6. As the Court will later explain, the Offer Letter selects both Nassau County state court and the Eastern District of New York, whereas the Confidentiality Agreement requires that actions be brought in Nassau County state court.

be interpreted together as Plaintiff's joint "employment agreements."[10] Defendants' arguments regarding whether, under *Yakin*, the Offer Letter selects the Eastern District of New York, and whether the language in the Offer Letter and Confidentiality Agreement should be interpreted alone or together, both relate to whether the Eastern District of New York is or is not the forum for which the parties bargained, and thus they both raise questions that precede the enforceability and modified *forum non conveniens* tests.

By contrast, Plaintiff argues the Offer Letter's forum selection clause "points to a federal court" and thus filing the action in the Eastern District of New York was "in compliance with the . . . forum selection clause" because the "Eastern District . . . was agreed upon by the parties" in the Offer Letter. Pl.'s Opp'n 5-6, 8. To this end, Plaintiff argues that the "Eastern District comprises Nassau County." Pl.'s Opp'n 8. Plaintiff contrasts the forum selection clause at issue from that in *Yakin*, arguing that the clause in *Yakin* simply said "in Nassau County" without any mention of state or federal court. Pl.'s Opp'n 9. Plaintiff, however, cites to no countervailing caselaw interpreting language equivalent to the clause at issue here. Plaintiff further argues that the Confidentiality Agreement is "a completely separate agreement," and that "none of the issues discussed in that separate agreement . . . are the subject matter of this lawsuit." Pl.'s Opp'n 9. In doing so, however, Plaintiff cites to no legal authority addressing the rules courts should apply to determine whether a contract is "a completely separate agreement" when there are multiple agreements between the parties. Nevertheless, Plaintiff's argument appears to counter Defendants' contention that the two agreements should be considered together by impliedly arguing that each agreement should instead only be held applicable to causes of action that arise within the scope of that individual agreement's subject matter. *See* Pl.'s Opp'n 7-9.

---

[10] The Court understands the second argument to be made in the alternative.

Thus, the Court understands Plaintiff's responsive arguments to be: (1) that, applying the terms of the Offer Letter alone, the Eastern District of New York is the correct forum for the employment law claims because the language in the Offer Letter specifically contemplates federal court, which differs from the clause in *Yakin*; and (2) that the Court should disregard the terms of the Confidentiality Agreement as irrelevant, and should apply only the Offer Letter's forum selection clause, because although the Confidentiality Agreement was entered into by the same parties and was executed in connection with Plaintiff and New You beginning an employment relationship, it only supersedes the Offer Letter with respect to the subject matter that it addresses.

In sum, the questions presented by the motion to dismiss the employment law claims are: (1) whether the court should apply the Offer Letter, the Confidentiality Agreement, or both; and (2) whether the applicable forum selection clause(s) select federal or state court (*i.e.*, whether the action was, in fact, brought in the correct forum). Courts simultaneously faced with these two questions have addressed them in any order, either by selecting the applicable contract before interpreting it, or by reconciling potential differences, thereby avoiding the question of which clause applies. Here, the Court will first address which contract is applicable because, as will be discussed, the clauses are inconsistent. To this end, the Court notes that both clauses are mandatory and were reasonably communicated to both parties, facts which neither party disputes.

*A. The Offer Letter Governs the Employment Law Claims in Counts One Through Five Because the Confidentiality Agreement Only Supersedes the Offer Letter with Respect to its Specific Subject Matter.*

The Court first addresses the question of which contract(s), and thus forum selection clause(s), applies. In essence, Defendants' argument that the "*clauses* contained in the *Agreements* underlying Plaintiff's employment" mandate Nassau County state court is that the two contracts are interrelated, and that the Confidentiality Agreement clarifies the intended forum. Defs.' Mem.

18. As neither party has cited any relevant standards for determining whether multiple writings are interrelated, the Court examines this issue absent the benefit of any on-point argument.

As an initial matter, the Court will briefly address choice of law. When a contract contains a choice of law clause, interpretive questions regarding its language are governed by the law selected in that clause—here, New York. *Martinez*, 740 F.3d at 217–18, 224. However, when "neither party has induced the Court otherwise," the Court may "apply general contract law principles and federal precedent to discern the meaning and scope of [a] forum clause." *WindServe Marine*, 2021 WL 5749827, at *3 (quotation omitted); *see also Martinez*, 740 F.3d at 223 ("[N]othing prevents the parties in litigation from choosing not to 'rely on any distinctive features of [the selected law].'" (quotation omitted)). Nevertheless, the Court notes that "[w]hen it comes to general rules of contract interpretation, there is little difference between federal common law and New York law." *Union Cap. LLC v. Vape Holdings Inc.*, No. 16-CV-1343, 2016 WL 8813991, at *3 n.1 (S.D.N.Y. Mar. 9, 2016) (quotation omitted). Neither of the parties have cited any precedent addressing contract interrelation from which the Court could infer the law on which the parties wish to rely. Thus, both parties have chosen not to rely on any distinctive features of New York law, and the Court will cite to both federal and New York law throughout this analysis.

In a case such as this, "[t]he Second Circuit requires that, when 'the two sides have put forth different contracts, each containing a forum selection clause designating a different forum, and the parties do not dispute the facts which gave rise to those two conflicting contracts, the court must decide . . . which forum selection clause governs'" before proceeding to a *forum non conveniens* analysis.[11] *WindServe Marine*, 2021 WL 5749827, at *3 (quoting *Lazare Kaplan Int'l*

[11] In many cases addressing this question, the two contracts unquestionably mandate different fora, *APR Energy*, 220 F. Supp. 3d at 428–29, which is not the case here. For now, the Court proceeds with this analysis on the premise that the two contracts *potentially* select different fora, and reserves the question of which fora are selected by the Offer Letter until later in this analysis.

*Inc. v. KBC Bank N.V.*, 528 F. App'x 33, 35 (2d Cir. 2013)); *see also APR Energy*, 220 F. Supp. 3d at 429. "Typically, such cases require courts to interpret two separate contracts and decide which contract, and therefore which forum selection clause, governs the claims at issue." *WindServe Marine, LLC*, 2021 WL 5749827, at *3 (citing *APR Energy*, 220 F. Supp. 3d at 429). Once the court has determined which clause applies, the court can proceed to a *forum non conveniens* analysis if the action has been filed in a forum other than the one mandated by the applicable clause. *APR Energy*, 220 F. Supp. 3d at 429.

Determining the applicable contract, and thus the applicable forum selection clause, from among multiple writings is a question of contract interpretation. *APR Energy*, 220 F. Supp. 3d at 429. "The primary objective in contract interpretation is to give effect to the intent of the contracting parties as revealed by the language they chose to use." *Lavazza Premium Coffees*, 575 F. Supp. 3d at 470; *see also In re MPM Silicones, LLC*, 874 F.3d 787, 795 (2d Cir. 2017). "If the intent of the parties is clear from the four corners of a contract, its interpretation is a matter of law for the court." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490, 499 (S.D.N.Y. 2020), *aff'd*, 29 F.4th 118 (2d Cir. 2022).

"The initial inquiry is whether the contractual language, without reference to sources outside the text of the contract, is ambiguous." *JN Contemp. Art*, 507 F. Supp. 3d at 499 (quoting *In re MPM*, 874 F.3d at 795). "[A] contract is unambiguous if its 'language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion.'" *Id.* "If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Id.* at 499–500 (citation omitted). When interpreting forum selection clauses in particular, "[i]f the forum selection clause is ambiguous in that it is susceptible of two reasonable

meanings, it will be construed against the party who drafted it." *Wagley v. JP Morgan Chase Bank, N.A.*, No. 18 CIV. 8668, 2019 WL 13223235, at *6 (S.D.N.Y. Sept. 10, 2019) (citation omitted).

"Under New York law, the determination of '[w]hether multiple writings should be construed as one agreement depends on the intent of the parties, . . . which is typically a question of fact for the jury.'" *Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, No. 16 CIV. 3103, 2017 WL 280818, at *7 (S.D.N.Y. Jan. 20, 2017) (quoting *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 89 (2d Cir. 2005)). However, "where 'the documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is a matter of law for the court.'" *Id.* (quoting *TVT Records*, 412 F.3d at 89). "'The parties' intent is derived from the plain meaning of the language employed in the agreements,' and divining it 'requires a court to give full meaning and effect to all of [the contract's] provisions.'" *Id.* (internal citations omitted); *see also NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 346–48 (S.D.N.Y. 2020) (relying on numerous contract provisions in determining which of two writings governed).

In addition to intent, courts examine the factual circumstances surrounding the transaction. *See, e.g.*, *CooperVision, Inc. v. Intek Integration Techs., Inc.*, 794 N.Y.S.2d 812, 817–18 (Sup. Ct. 2005). "Under New York law, all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together, even though they were executed on different dates and were not all between the same parties." *TVT Recs.*, 412 F.3d at 89–90 (quotations omitted). However, even if a writing is part of a larger transaction, the provisions contained in one contract do not necessarily apply to all other contracts that are part of that transaction. *Crede*, 2017 WL 280818, at *7. "Parties are free to enter into multiple contracts as part of a single transaction without the provisions in one contract governing another contract." *Id.* (quotation omitted); *see also id.* ("[E]ven where a court considers several contracts as subparts of

a single transaction, the court may still enforce the 'express limitations in a particular agreement.'" (citation omitted)); *Coleman Co. v. Hlebanja*, No. 96 CIV. 1288, 1997 WL 13189, at *7 (S.D.N.Y. Jan. 15, 1997) ("[E]ven if several contracts that constitute part of the same transaction are considered one contract, the different obligations within each contract may be independent and divisible."). "It is well settled . . . that even where separate agreements are meant to be construed together, the 'primary objective' in contract interpretation 'is to give effect to the intent of the parties as revealed by the language they chose to use.'" *AIOI Nissay Dowa Ins. Co. v. Prosight Specialty Mgmt. Co.*, 563 F. App'x 68, 69 (2d Cir. 2014) (quotation omitted); *see also id.* (noting that "[t]he rule . . . is to be employed only to give effect to the intention of the parties." (quoting 11 Williston on Contracts § 30:26 (4th ed.))). Thus, the general rule that two contracts made for the same purpose as part of the same transaction will be interpreted together "does not require that the two separate instruments must be deemed consolidated and one for all purposes or that a separate and independent provision of one, such as a jurisdictional paragraph, *which has no bearing on the construction to be placed on the two instruments*, is to [be] incorporated in the other.'" *CooperVision*, 794 N.Y.S.2d at 818 (internal citations omitted) (emphasis in original). However, if two agreements are interrelated and a conflicting forum selection clause is incorporated into the other, "a Court must avoid an interpretation that renders a provision of either agreement superfluous." *NuMSP*, 462 F. Supp. 3d at 347 (citation omitted); *Wagley*, 2019 WL 13223235, at *6 n.8 ("[W]here the 'proposed interpretation of [one agreement's] forum selection clause, which would limit suits . . . to New York state courts, would render the [competing] forum-selection provision that expressly covers the Southern District of New York superfluous[,]' . . . the former must be read broadly to include 'both federal and state courts.'" (citation omitted)).

To determine the parties' intent and the purpose behind the agreements, courts examine a variety of factors. For example, courts look to whether a subsequent writing supersedes the earlier writing with respect to specific subject matter. *Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011) ("Under New York law, '[i]t is well established that a subsequent contract regarding the same matter will supersede the prior contract.'" (citation omitted)); *Reed v. Luxury Vacation Home LLC*, 632 F. Supp. 3d 489, 506 (S.D.N.Y. 2022) (examining whether various agreements superseded one another). Courts also examine whether a subsequent writing supersedes a prior writing by operation of a merger clause. *See, e.g.*, *Applied Energetics*, 645 F.3d at 525–26, 525–26 n.2. Courts also examine whether the earlier writing was incorporated by reference, and the extent to which it was incorporated by reference. *APR Energy*, 220 F. Supp. 3d at 430 ("Incorporation by reference produces a single agreement out of the incorporated documents and the contract itself." (quoting *Lamb v. Emhart Corp.*, 47 F.3d 551, 558 (2d Cir. 1995))); *id.* ("The well settled rule is that a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified." (quoting *CooperVision*, 794 N.Y.S.2d at 819)); *see also NuMSP*, 462 F. Supp. 3d at 347–48. Finally, courts examine whether the forum selection clauses, by their own language, limit their application to only those matters arising from an individual writing, even if the writings form part of the same transaction. *Lazare Kaplan*, 528 F. App'x at 36 ("Neither side acknowledges the possibility, which seems to us quite real, that each clause could apply only to particular claims and/or particular parties."); *SBI Invs. LLC, 2014-1 v. Eventure Interactive, Inc.*, No. 17-CV-4159, 2018 WL 2417847, at *5–6 (S.D.N.Y. May 28, 2018) (finding, in a case with three different forum selection clauses that each clause governed the breach of contract claims for each individual contract, even though the various contracts all arose from interrelated transactions).

Here, an examination of the two writings makes clear that they were intended to be separate agreements. First, they address different subject matter. For example, the Offer Letter contains eleven provisions spanning all the core topics one would associate with the initiation of an employment agreement, such as salary, benefits, taxes, and one entitled "Company Policies, Company Property and Confidentiality," which briefly covers topics including confidentiality, non-disclosure, assignment of inventions, and ownership and return of company equipment. Defs.' Ex. A 1–3. Most of these provisions, apart from the "Company Policies, Company Property and Confidentiality" provision, create obligations for the employer. By contrast, the Confidentiality Agreement contains none of the fundamental matters relevant to the initiation of an employment relationship such as salary and benefits. Instead, the Confidentiality Agreement, across seven pages, provides for the same topics discussed in the "Company Policies, Company Property and Confidentiality" paragraph of the Offer Letter, just in substantially more detail—provisions which largely create obligations for the employee. Defs.' Ex. B 1–7. While the topics that were mentioned in the Confidentiality Agreement were also mentioned in the initial Offer Letter, the Offer Letter's provision regarding those topics does not incorporate the Confidentiality Agreement by reference—it does not mention the forthcoming Confidentiality Agreement at all. Defs.' Ex. A 1–3; *see CooperVision*, 794 N.Y.S.2d at 817 ("The absence of any express incorporation by reference, coupled with the choice of an "order of preference" clause, . . . means that the drafter . . . intended that each agreement have and maintain its own identity . . . ." (citations omitted)). The Confidentiality Agreement, as the later agreement, thus supersedes the Offer Letter's provisions regarding those topics. *See Applied Energetics*, 645 F.3d at 526.

The Confidentiality Agreement's merger clause further demonstrates that the agreements were intended to be separate, and that they involve different subject matter. Specifically, it states

that "[t]his Agreement constitutes the entire agreement of the parties and supersedes any prior agreements between them *with respect to the subject matter hereof*." Defs.' Ex. B 6 (emphasis added). Thus, by its plain terms, the Confidentiality Agreement supersedes the prior Offer Letter only with respect to the three topics it comprises. *See*, *e.g.*, *Applied Energetics*, 645 F.3d at 525–26, 525–26 n.2. The Confidentiality Agreement's forum selection clause is likewise cabined to "[a]ny action arising hereunder." Defs.' Ex. B 6; *see CooperVision*, 794 N.Y.S.2d at 820–21 (discussing *Sempra Energy Trading Corp. v. Algoma Steel, Inc.*, 300 F.3d 242 (2d Cir.2002) which held that forum selection clauses in ancillary contracts that were limited to "disputes arising [from] 'this agreement'" were not imported into over-arching agreement). Given that the Confidentiality Agreement supersedes the Offer Letter with respect to confidentiality, non-disclosure, and assignment of inventions, and nothing else, the Offer Letter's remaining obligations entirely relate to the details of Plaintiff's position including compensation, benefits, job duties, supervisors, primary duty station, travel requirements and similar matters, all of which substantially differ from the subject matter in the Confidentiality Agreement. Defs.' Ex. A 1–3; s*ee Coleman Co.*, 1997 WL 13189, at *7 (finding that one writing creating performance obligations for plaintiff and the other creating obligations for defendant indicated that the two agreements were intended to be separate); *Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13 (1972); *CooperVision*, 794 N.Y.S.2d at 818–19 (finding contract preserving seller's intellectual property rights in software and contract for sale and installation of software involved different purposes).

Nevertheless, even if the agreements are interrelated, the forum selection clauses are independent and divisible, with each applying to the content of the agreement in question. *See Coleman Co.*, 1997 WL 13189, at *7 ("[E]ven if several contracts that constitute part of the same transaction are considered one contract, the different obligations within each contract may be

independent and divisible."); *see also SBI Invs.*, 2018 WL 2417847, at *5–6. To this end, the language of the Confidentiality Agreement's forum selection clause makes clear that its application is limited to actions arising "hereunder"—in other words, those pertaining to the subject matter of the separate writing. *See Crede*, 2017 WL 280818, at *7 (noting that, for interrelated contracts, "[t]he court may still enforce the 'express limitations in a particular agreement.'" (citation omitted)). In sum, the forum selection clause in the Confidentiality Agreement is a "separate and independent provision . . . such as a jurisdictional paragraph, *which has no bearing on the construction to be placed on the two instruments*," and thus need not be deemed incorporated into the Offer Letter. *CooperVision*, 794 N.Y.S.2d at 818 (emphasis in original). Thus, the Confidentiality Agreement's forum selection clause is limited to confidentiality, non-disclosure, and assignment of inventions, none of which are at issue here.

Of the two agreements, the Offer Letter unquestionably governs the causes of action that are at issue. For example, the Offer Letter begins by stating that Plaintiff's "employment [is] under the following terms and conditions," a broad phrase indicating that Plaintiff's overall employment is governed by the agreement. Defs.' Ex. A 1. This is further confirmed by language at the end of the agreement, which states that Plaintiff's "employment . . . [wa]s conditioned on [Plaintiff] agreeing to the terms and conditions of this letter." Defs.' Ex. A 3. Later, the Offer Letter contains a joint choice of law and forum selection clause, both of which form two parts of the same sentence, and the same numbered paragraph, with the same heading. Defs.' Ex. A 2–3. The provision begins by stating that "[t]he parties agree that (i) this Agreement *and all matters concerning your employment with the Company and/or the termination of such employment (except as otherwise may be provided in writing signed by you and an authorized representative of the Company)* shall be governed and construed by . . . ." New York law. Defs.' Ex. A 2 (emphasis added). This

language contemplates employment law actions such as discrimination and retaliation which almost always involve termination of an employee's employment, and thus Defendant New You, the drafter of the agreement, included this language with the intent that the Offer Letter would govern such actions.[12] The second bullet point in this clause states that "(ii) any dispute concerning or arising out of this Agreement and other such matters shall be tried exclusively in an appropriate state or federal court in Nassau County, New York." Defs.' Ex. A 3. This language is broad, encompassing "any dispute concerning or arising out of this Agreement *and other such matters*." Defs.' Ex. A 3 (emphasis added). Notably, the preceding choice of law provision already confirmed that "matters concerning your employment with the Company and/or termination of such employment" is a topic that "concern[s] or aris[es] out of this Agreement," and precedent confirms that employment discrimination and retaliation claims do, in fact, arise out of employment agreements. Defs.' Ex. A 2–3; *Fagbeyiro v. Schmitt-Sussman Enterprises, Inc.*, No. 17-CV-7056, 2018 WL 4681611, at *2 (S.D.N.Y. Sept. 28, 2018) ("[F]orum selection clauses covering legal actions 'arising' from or 'relating' to an employment agreement apply to discrimination and retaliation claims." (citation omitted)). Moreover, the language "and other such matters" serves to further broaden the scope of the clause. Defs.' Ex. A 2–3. By contrast, the Confidentiality Agreement's forum selection clause is limited to "[a]ny action arising hereunder," and is thus narrowed to only those topics it comprises. Defs.' Ex. B 6; *see Crede*, 2017 WL 280818, at *12–13 (finding that forum selection clause with language "any dispute hereunder" is "more specific, and thus more narrow" under New York law than "broad" forum selection clause with

[12] As discussed, the clause's application to employment discrimination and retaliation matters is not modified by the Confidentiality Agreement via the language "except as otherwise may be provided in writing," since the Confidentiality Agreement has no logical relation to these topics. Defs.' Ex. A 2.

language "arising out of or relating to").[13] Finally, the Confidentiality Agreement states that "[t]his Agreement does not constitute nor create an employment agreement." Defs.' Ex. B 7. As there was certainly an employment agreement between the parties, the Offer Letter is the only contract giving rise to that agreement.

The Court's finding comports with a wide array of precedents that Defendants fail to address. For example, in *Kumar v. Opera Solutions OPCO, LLC*, the Southern District held that employment discrimination claims under federal and state law, such as those at issue here, did not "arise out" of an NDA under the terms of its forum selection clause. 2021 WL 4442832, at *12. The Confidentiality Agreement here involves much the same subject matter as an NDA. Moreover, the contracts are distinguishable from cases in which courts have held that two writings were interrelated, and that the dispute resolution provisions of one writing ultimately overrode another. For example, in *NuMSP, LLC v. St. Etienne*, the Southern District held, in a case involving an Asset Purchase Agreement and a Non-Compete Agreement, that the "Non-Compete Agreement was intended to be *part of* the APA, and that the APA was intended to be the main agreement between the parties." 462 F. Supp. 3d at 346–47. In that case, the APA stated that "[a]ll Schedules and other attachments or Closing Date documents signed referenced in this Agreement are part of this Agreement and are incorporated herein by reference," and that "the APA . . . 'and all related Closing Date transaction documents[,] constitute[d] the entire agreement among the Parties and supersede[d] any prior agreement or understanding . . . among the Parties concerning its subject matter.'" *Id.* Under the language of the APA, the Non-Compete Agreement was one of the closing

[13] The Second Circuit interprets the phrase "arise out of" as narrow language. *Kumar v. Opera Sols. OPCO, LLC,* No. 1:20-CV-6824, 2021 WL 4442832, at *11 (S.D.N.Y. Sept. 28, 2021). While the parties have declined to rely on any distinctive features of New York law, thus allowing this Court to apply federal law, the Court finds New York law to be more persuasive. Even if "aris[e] out of" is interpreted narrowly, employment discrimination and retaliation claims nevertheless arise out of employment agreements. *Fagbeyiro,* 2018 WL 4681611, at *2.

date documents, and was also physically attached to the APA. *Id.* The court thus held that the two documents "must be 'read and interpreted together, since they were executed the same day, involved the same parties, and served the same [or similar] purpose[s],'" and thereby concluded "that the Non-Compete Agreement was expressly incorporated by reference into and superseded by the APA." *Id.* at 347 (quoting *Union Capital*, 2016 WL 8813991, at *3).

While Defendants argue that the Offer Letter and Confidentiality Agreement should be interpreted together as Plaintiff's "Employment Agreements," Defs.' Mem. 17, none of the factors present in *NuMSP* or similar cases which militated in favor of a joint interpretation of two contracts are present here. While the two contracts did, in the abstract, arise as a result of Plaintiff and New You beginning an employment relationship, they were not executed on the same day, were not attached to one another, and neither agreement makes mention of the other or incorporates the other by reference. Defendants provide no contrary caselaw which would command a joint interpretation of these two agreements which, by their own terms, are separate contracts, the latter of which has no relevance to the causes of action pertaining to this suit. In fact, Defendants apparently concede that the Offer Letter, and not the Confidentiality Agreement, governs the employment law causes of action at issue. Specifically, Defendants' motion argues that "[t]here can finally be no credible dispute that [the Offer Letter's forum selection] clause covers the Plaintiff and all of her claims related to her employment and her termination as such clause explicitly so states." Defs.' Mem. 18. While Defendants' discussion of the Confidentiality Agreement otherwise mirrors their Offer Letter argument sentence-by-sentence, Defendants notably chose to exclude a sentence arguing that the Confidentiality Agreement covers Plaintiff's claims related to her employment and her termination. Defs.' Mem. 18. In their reply brief, Defendants make no mention of the Confidentiality Agreement at all and again concede that the

Offer Letter governs the employment law claims at issue. Reply Mem. Law Further Supp. Defs.' Mot. Dismiss and/or Transfer ("Defs.' Reply") 3, ECF No. 16.

In sum, the parties were free to contract for employment law matters and confidentiality matters to be heard in different fora, and did so here. Defendants present no precedent to support a joint interpretation of the two contracts, and after an exhaustive search, the Court has found none. In any event, Defendants have failed to carry their burden in presenting their motion to dismiss by failing to cite any relevant caselaw related to the question presented. *See Rothberg v. Phil's Main Roofing, LLC*, No. 14-CV-10195, 2017 WL 1162904, at *3 n.5 (S.D.N.Y. Mar. 24, 2017) (collecting cases). Consequently, the Offer Letter's forum selection clause alone governs Plaintiff's discrimination and retaliation claims.

*B. The Eastern District of New York is a Proper Forum Under the Offer Letter's Forum Selection Clause.*

As the Offer Letter governs the instant claims, the Court must now determine whether its forum selection clause mandates that actions be brought only in Nassau County state court, as argued by Defendants, or permit the action to be filed in the Eastern District of New York which comprises Nassau County, as argued by Plaintiff.[14] Again, the parties have largely failed to provide any relevant caselaw addressing the specific issue presented: whether a forum selection clause with language selecting "state or federal court" in a specific county selects only state court, or both state and federal court, if there is no physical federal courthouse in that county. Defendants, on the one hand, rely solely on the Second Circuit's decision in *Yakin,* where the clause did not contain

[14] The Court's use of "mandatory" and "permissive" language throughout this analysis should not be construed to analyze whether the clause is mandatory or permissive under the Second Circuit's enforceability test. The clause uses the language "shall be tried exclusively in" and is thus plainly mandatory, which neither party disputes. The language employed merely reflects the reality that mandatory forum selection clauses can mandate one forum or mandate multiple fora, thereby allowing an action to proceed in any of those fora without violating the clause.

the language "state or federal court." On the other hand, Plaintiff distinguishes *Yakin* because it did not say "state or federal court," but cites no caselaw for this proposition.

Whether a forum selection clause is ambiguous with respect to the forum chosen is a threshold question of law which, as discussed, precedes the application of the enforceability and modified *forum non conveniens* tests, in that it asks whether an action has already been filed in the correct forum. *Yakin*, 566 F.3d at 75; *Martinez*, 740 F.3d at 217; *Atl. Marine*, 571 U.S. at 63; *Harrington*, 2017 WL 4621618, at *2–3. This threshold question is one of contract interpretation. *Yakin*, 566 F.3d at 75–76. "In interpreting a contract under New York law, words and phrases . . . should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal quotation marks omitted).

The Offer Letter's forum selection clause states that "any dispute . . . shall be tried exclusively in an appropriate state or federal court in Nassau County, New York." Defs.' Ex. A 3. In sum, Defendants argue that this clause selects only state court, because there is no federal courthouse "in Nassau County, New York." Defs.' Mem. 16–19. In doing so, Defendants rely on the Second Circuit's decision in *Yakin*, in which the Second Circuit interpreted the following forum selection clause: "It is agreed that the venue and place of trial of any dispute that may arise out of this Agreement or otherwise, to which Tyler Hill Camp, or its agents, is a party shall be in Nassau County, New York." *Yakin*, 566 F.3d at 74. There, the Second Circuit held that the phrase "shall be in Nassau County, New York" mandated state court, because there was no federal court "in Nassau County." *Id.* In doing so, the Second Circuit rejected an argument that the right to bring actions in a federal forum had not been explicitly or unambiguously waived and that the clause therefore could not be properly understood to relinquish what would otherwise be a right to remove

to federal court. *Id.* at 75. Instead, the Second Circuit held that the clause was explicit and unambiguous in that it specifically selected a geographic area as the "place of trial of any dispute," and there was no federal courthouse in Nassau County in which a trial could occur. *Id.* at 76. Relying on *Yakin*, Defendants argue that "the effect of a forum selection clause designating a county where no federal court sits is to divest federal jurisdiction over the dispute." Defs.' Mem. 17. In response, Plaintiff argues that the "state or federal court" language differs from *Yakin*, and that such language specifically contemplates the availability of a federal forum. Pl.'s Opp'n 9.

Both parties, however, fail to address the Southern District's decision in *Androb Jewelry Service, Inc. v. Malca-Amit USA, LLC*, which interpreted a forum selection clause nearly identical to the one at issue here and held that *Yakin* was distinguishable, rejecting the very same argument advanced by Defendants. No. 16-CV-5171, 2017 WL 4712422, at *5–8 (S.D.N.Y. Sept. 25, 2017). Specifically, in *Androb*, the forum selection clause provided "that any action arising out of [the NDA] shall be brought in the state or federal courts located in the County of Queens." *Id.* at *3. As in *Yakin*, the clause selected a county that was within the Eastern District's geographic territory, but the Eastern District did not physically have a courthouse in Queens County. *Id.* at *3–4. Unlike the clause in *Yakin*, however, the clause in *Androb* mandated that actions "be brought *in the state or federal courts* located in" Queens County. *Id.* at *3. The Southern District thoroughly analyzed this language and expressly rejected an argument that, under *Yakin*, the clause mandated that actions be brought only in Queens County state court. *Id.* at *4.

Specifically, the court held that "[b]ecause the clause . . . expressly contemplates the availability of a federal [forum], and because no federal courthouse is located in the County of Queens, the only reasonable interpretation of the clause is that it encompasses federal courts that have jurisdiction over the County of Queens." *Id.* at *5. The court found that the rationale in *Yakin*

supported this outcome. First, the court noted the Second Circuit's reasoning in *Yakin* that the clause at issue "in no way contemplated the availability of a federal court to hear any action arising out of that agreement." *Id.* at *6 (citing *Yakin*, 566 F.3d at 74, 76). By contrast, the clause in *Androb* "expressly contemplate[d] that a federal court [*would*] be available to hear the case" by mentioning federal court. *Id.* (emphasis in original). The court found that, unlike in *Yakin* where limiting the action to state court was thus completely consistent with the text, a conclusion that the language "state or federal courts" precluded an action from being brought in federal court would "render[] a crucial portion of [the clause's] text wholly superfluous." *Id.* The court found that it would be illogical to hold that "a clause that expressly contemplates the availability of a federal forum must be interpreted as a waiver of the right to bring claims in federal court," because the express mention of federal court "cannot have been intended to limit [the forum] exclusively to state court." *Id.* at *6–7. Finally, the court reviewed cases interpreting similar language and found that they were consistent with its holding. *Id.* at *7 (collecting cases). While the court noted that the clause was not "a model of clarity," it held that the most reasonable interpretation of the language "federal courts located in the County of Queens" was that it referred to federal courts that covered Queens County. *Id.* at *8. Notably, the court applied New York law to interpret the contract. *Id.* at *4.

The language in the Offer Letter mandating that actions be brought "in an appropriate state or federal court in Nassau County, New York" is effectively identical to the language in *Androb*, and the Court agrees with the Southern District's interpretation of the relevant precedent. *Id.* at *3. Defendants have failed to cite, discuss, or distinguish *Androb* or any of the cases to which it cites, instead entirely relying on an argument under *Yakin* which was expressly rejected by the court in *Androb* after a thorough analysis thereof. While Plaintiff also fails to cite to *Androb* or any other countervailing caselaw, Plaintiff's assertion that "federal court" contemplates a federal forum at

least articulates the holding in *Androb*, and the Court is thus inclined to find that Plaintiff did not waive the issue. *See* Pl.'s Opp'n 9. Moreover, drafting ambiguities must generally be construed against the drafter, and factual questions presented by contractual ambiguities, at the motion to dismiss stage, must be resolved in favor of plaintiffs. *Reed*, 632 F. Supp. 3d at 508 n.12 (noting that, "on a motion to dismiss, the Court 'resolve[s] any contractual ambiguities in favor of the plaintiff'" (citation omitted)); *Wagley*, 2019 WL 13223235, at *6 ("If the forum selection clause is ambiguous in that it is susceptible of two reasonable meanings, it will be construed against the party who drafted it."); *see also Androb*, 2017 WL 4712422, at *5 (same) (collecting cases).

In sum, the Offer Letter's forum selection clause mandates that the action be brought in state or federal court in Nassau County, New York, and thus, under *Androb* and similar cases, the action may be brought in either Nassau County state court or the Eastern District of New York. In any event, Defendants have failed to address any cases addressing the "state or federal court" language, and have thus failed to carry their burden in bringing their motion to dismiss. *See Rothberg*, 2017 WL 1162904, at *3 n.5 (collecting cases). As such, the Court respectfully recommends that Defendants' motion to dismiss Plaintiff's employment law claims be denied.

## II. Plaintiff's Breach of Contract Claim Must Be Brought in State or Federal Court in New York, New York, Which Includes the Eastern District.

Defendants' bifurcated motion next moves to transfer or dismiss Plaintiff's breach of contract action under the Equity Grant Agreement, arguing that the Equity Grant Agreement provides for the "***exclusive* jurisdiction of the courts sitting in New York County, New York**." Defs.' Mem 6, 13 (emphasis in original). Thus, according to Defendants, the action should either be transferred to the Southern District of New York under the § 1404(a) codified doctrine of *forum non conveniens*, or dismissed under the residual common law doctrine in favor of New York County state court. Defs.' Mem. 13, 17, 20–21. In support, Defendants argue that the breach of

contract action is a "separate and distinct claim[]" from the employment law claims, and that they should instead be brought as two separate actions. Defs.' Mem. 20–21. The Court understands this argument to be that the Equity Grant Agreement and the Offer Letter should be interpreted separately. Defs.' Mem. 20. Notably, the forum selection clause in the Equity Grant Agreement does not use the language "New York County, New York," (*i.e.*, the borough of Manhattan) but rather uses the language "New York, New York." Defs.' Ex. C 9.

However, in response, Plaintiff fails to object to Defendants' interpretation of the clause as selecting "New York County" or argue that the Eastern District of New York is contemplated by the clause, instead apparently conceding the point by arguing that the action should be allowed to proceed in a forum *other than* the preselected forum in the interests of judicial efficiency. To this end, Plaintiff argues that the basis for the breach of contract claim is that the unlawful termination of her employment caused her to stop receiving equity grants, and thereby the contract was terminated for unlawful reasons. Pl.'s Opp'n 10–12. Thus, Plaintiff argues, both the employment law actions and the breach of contract action involve the same factual questions, and both actions should proceed together. Pl.'s Opp'n 9–14.

Although Plaintiff seemingly concedes that the breach of contract action has been filed in a forum other than the preselected forum, Plaintiff also advances an argument, devoid of any citations, that the Offer Letter incorporates the Equity Grant Agreement by reference. Specifically, Plaintiff argues that, because the Offer Letter provided that Plaintiff would earn equity "as part of her compensation in exchange for her employment with the Defendants" and mentioned the Equity Grant Agreement by stating that "[t]he details of the equity grant will be given to you in a separate equity grant agreement letter," the Offer Letter incorporates the Equity Grant Agreement. Pl.'s Opp'n 11. The Court understands this argument to be that the Offer Letter's forum selection clause

supersedes the forum selection clause clause in the Equity Grant Agreement, and thus governs the breach of contract action. As Plaintiff previously argued that the Offer Letter's forum selection clause selected the Eastern District, Plaintiff's argument for incorporation by reference would thus conclude that the breach of contract action *is* properly before the Eastern District. The Court will first address the motion to transfer which is both procedurally and jurisdictionally improper and thus need not be considered on its merits. The Court will then address the motion to dismiss.

*A. The Breach of Contract Action Cannot Be Transferred to the Southern District Because Defendants Have Failed to Address Severance, and the Southern District Will Lack Subject Matter Jurisdiction.*

First, Defendants move to transfer Plaintiff's breach of contract action to the Southern District of New York under § 1404(a), arguing that the Southern District is one of two permissible courts under the Equity Grant Agreement's forum selection clause. However, binding Second Circuit precedent dictates that § 1404(a) "authorizes the transfer only of an entire action and not of individual claims." *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968). In order to transfer individual claims, courts must first sever the claims into separate "actions," in accordance with Rule 21 of the Federal Rules of Civil Procedure. *Id.*; *see also Crede*, 2017 WL 280818, at *10–11 (discussing at length the procedural prerequisite of severance). Defendants have failed to even mention, much less address, severance in their motion to transfer, and the Court will not address it *sua sponte*.[15]

More importantly, breach of contract is a state law cause of action, and the parties are not diverse. Compl. ¶¶ 2, 7–23; Defs.' Mem. 3. The current basis for this Court's subject matter jurisdiction is federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiff's federal employment law claims, with supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining

[15] Plaintiff, too, has failed to raise Defendants' oversight, but the Court finds that it is incumbent upon Defendants to demonstrate, in the first instance, the merits of their motion. *See Rothberg*, 2017 WL 1162904, at *3 n.5.

claims. Compl. ¶ 2. Were the Court to sever the breach of contract action and transfer it to the Southern District, SDNY would be unable to hear the case. While both parties fail to raise the subject matter jurisdiction issue, the Court is obliged to raise it *sua sponte*. Thus, Defendants' motion to transfer the breach of contract action must be denied.

*B. Defendants' Motion to Dismiss the Breach of Contract Action Should Be Denied Because the Forum Selection Clause in the Equity Grant Agreement Mandates "New York, New York," which Includes the Eastern District.*

In moving to dismiss the breach of contract action, Defendants argue repeatedly that the forum selection clause in the Equity Grant Agreement mandates that the action be brought in a state or federal court in New York County (*i.e.*, the borough of Manhattan). *See, e.g.*, Defs.' Mem. 13 ("[T]his Court should dismiss and/or transfer venue of the remaining causes of action . . . so that the action may proceed in the proper venue, New York County."); *see also* Defs.' Mem. 6, 17, 21; Defs.' Reply 3, 5–6. However, as discussed, the forum selection clause in the Equity Grant Agreement states that the parties agree "to the exclusive jurisdiction and venue of any state or federal court sitting in *New York, New York*." Defs.' Ex. C 9.

Defendants provide no argument and cite to no relevant caselaw to explain why their motion repeatedly interprets the language "New York, New York" as "New York County," rather than "New York City." Moreover, relevant caselaw interpreting similar language supports the conclusion that clauses using the phrase "New York, New York" should be interpreted to mean New York City. For example, in *SBI Investments*, the Southern District interpreted a forum selection clause mandating that actions be brought in "the state and federal courts sitting in the City of New York, New York, for the adjudication of any dispute hereunder." *SBI Invs.*, 2018 WL 2417847, at *2. The Southern District found that this language "requires any action to be filed in a state court located in the City of New York or federal court located in the City of New York,

which stretches across the Southern and Eastern Districts of New York." *Id.* at *6. While the forum selection clause in *SBI Investments* mandated "the City of New York, New York," rather than just "New York, New York," the language merely reflects the fact that "New York, New York," is, in fact, a city. *See id.* This makes sense, as the "[city, state]" format is common in forum selection clauses selecting cities. *See Eklecco Newco, LLC v. Gloria Jean's Gourmet Coffees Corp.*, No. 5:08-CV-00861, 2009 WL 2185405, at *3 (N.D.N.Y. July 17, 2009) (holding forum selection clause mandating "Syracuse, New York," to select the city of Syracuse). In fact, on one occasion, Defendants apparently concede that the language "New York, New York" selects New York City, not New York County. Defs.' Mem. 20 ("There can similarly be no dispute that such clause is mandatory as it gives exclusive jurisdiction to courts situated in New York City, New York.").

Defendants provide no argument for why the preface "City of" should be a basis for distinguishing the forum selection clause in *SBI Investments* from the clause at bar. Moreover, Defendants' argument that the Equity Agreement provides that any disputes would fall within the "***exclusive*** **jurisdiction of the courts sitting in New York County, New York**," belies the point it tries to make. Defs.' Mem. 6 (emphasis in original). If Defendants wanted the contract to mandate that actions be brought in "New York County, New York," Defendants, as the drafters of the agreement, could have drafted the forum selection clause using that precise language, or any number of common alternate phrases used to select the individual counties or boroughs of New York City, examples of which are legion in forum selection clause cases.[16] *See, e.g.*, *Trump v. Deutsche Bank Tr. Co. Americas*, 887 N.Y.S.2d 121, 123 (2009) (discussing forum selection clause mandating "any federal or state court in New York County, New York"); *SBI Invs.*, 2018 WL 2417847, at *2, *5–6 (finding that forum selection clause mandating that actions be brought

---

[16] This Court found no less than ten examples of clauses using the exact phrase "New York County, New York."

in state or federal court "in the state and county of New York" mandated New York County); *Crede*, 2017 WL 280818, at *2 (discussing forum selection clauses mandating "the state and federal courts sitting in the City of New York, Borough of Manhattan"). However, Defendants chose not to do so, and the Court will not rewrite the clause to insert language that Defendants, as the drafters of the agreement, chose not to include. *JN Contemp. Art*, 507 F. Supp. 3d at 499–500 ("If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement." (citation omitted)); *see also Wagley*, 2019 WL 13223235, at *6 ("If the forum selection clause is ambiguous in that it is susceptible of two reasonable meanings, it will be construed against the party who drafted it.").[17] To that end, it is widely recognized that both the Southern District and the Eastern District are located in New York City. *SBI Invs.*, 2018 WL 2417847, at *6; *cf. Stennette v. New York Dep't of Soc. Servs. Hum. Res. Admin.*, No. 22 CIV. 7747, 2022 WL 7737782, at *1 (S.D.N.Y. Sept. 19, 2022) ("The HRA, like every New York City agency, resides, for venue purposes, within both this judicial district, the Southern District of New York, and within the Eastern District of New York."); *Royal Swan Navigation Co. v. Glob. Container Lines, Ltd.*, 868 F. Supp. 599, 606 n.8 (S.D.N.Y. 1994) ("'New York City,' without more, . . . leaves in doubt whether . . . the noted activities occurred . . . within the confines of the Southern District of New York, as opposed to . . . the Eastern District of New York[].").

As such, the Court finds that the forum selection clause in the Equity Grant Agreement mandates that actions be brought in New York City, which includes both the Southern District and the Eastern District. This action has been brought in the Eastern District. This conclusion, of

[17] The Equity Grant Agreement's choice of law clause selects Delaware law. Defs.' Ex. C 8–9. As mentioned, neither of the parties has chosen to rely on distinctive features of any jurisdiction's law in support of their arguments. For good measure, however, the Court notes that Delaware similarly interprets contractual ambiguities against the drafter. *E.g.*, *Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 630 (Del. 2003) (reaffirming "the well-accepted *contra preferentem* principle of construction, which is that ambiguities in a contract should be construed against the drafter"); *see also Cambridge Cap. LLC v. Ruby Has LLC*, No. 20-CV-11118, 2023 WL 3956868, at *14 (S.D.N.Y. June 2, 2023) (noting that New York and Delaware apply similar principles of contract interpretation).

course, raises an additional question, as the Eastern District does have a physical courthouse in New York City, but the instant action has been brought in a courthouse outside New York City. For this question, the text of § 1404(a), which codifies the doctrine of *forum non conveniens* for federal courts and provides for transfers between them, is instructive. Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This language, notably, provides for transfers to other districts or divisions. However, the Eastern District of New York does not have divisions, nor do any of the districts in the state of New York. *See* 28 U.S.C. § 112 ("Court for the Southern District *shall be held at* . . . . Court for the Eastern District *shall be held at* . . . .") (emphasis added); *Fulfree v. Manchester*, 182 F.3d 899 (2d Cir. 1999) ("[Plaintiff's] contention that the removal notice was filed in the wrong 'division' of the Southern District of New York is erroneous as a matter of law since that district is not divided into divisions." (citing 28 U.S.C. § 112)). The Eastern District of New York is instead divided into places for holding court. *Speedfit LLC v. Woodway USA, Inc.*, 642 F. Supp. 3d 429, 440 (S.D.N.Y. 2022) (citing *United States v. Scott*, 545 F. Supp. 3d 152, 164 n.6 (S.D.N.Y. 2021)). Under this rationale, the Southern District in *Speedfit LLC* held that an action governed by a forum selection clause had not been removed to the wrong "district [or] division" under 28 U.S.C. § 1441(a) because the Southern District does not have divisions. *Id.* at 437–38, 440–41. While § 1441(a) is a venue provision, *id.* at 441 n.6 (citing *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998)), § 1404(a) likewise uses the language "district or division."

An examination of the Eastern District's Rules for the Division of Business confirms this conclusion. While Rule 1(d)(3) designates only cases with a Nassau or Suffolk County nexus to

the Central Islip division, Rule 2(e) gives the Chief Judge discretion to reassign cases between courthouses with the consent of the judges assigned and as circumstances require. The Court notes that the Rules do *not* create private rights for litigants. Nevertheless, this discretion to reassign cases between courthouses demonstrates that it is permissible to hear cases in either courthouse without the consent of the parties.[18] Moreover, several other policy factors militate in favor of hearing the actions in the same courthouse. For example, both the employment law actions and the breach of contract action involve the same questions of fact, and that the interests of judicial efficiency militate in favor of allowing the actions to proceed together. *Lavazza Premium Coffees*, 575 F. Supp. 3d at 466–67 ("'The fact that some claims are clearly subject to the clause can weigh strongly in favor of' enforcing the forum-selection clause as to the entire action, 'including the other claims—especially where all of the claims are factually interrelated.'" (quoting *Androb*, 2017 WL 4712422, at *3)); *Reed*, 632 F. Supp. 3d at 509 (same); *see also Fasano v. Li*, 47 F.4th at 103–04 (discussing circumstances in which third party non-signatories can be bound by a forum selection clause). Specifically, the vast majority of the events giving rise to this action occurred in Nassau County and Suffolk County, as Plaintiff's primary duty station was Roslyn Heights and more than half of the New York locations that Plaintiff was employed to oversee and was required to travel to are situated in either Nassau County or Suffolk County. Defs.' Ex. A 1; Compl. ¶ 52. Moreover, as in *Androb*, a forum selection clause providing for "state or federal court" in a given county or city does not necessarily require that a federal courthouse be present in that county or city, so long as the district's territory includes it. *Androb*, 2017 WL 4712422, at *5–7.

Thus, Defendants' motion to dismiss the breach of contract claim should be denied because the forum selection clause in the Equity Grant Agreement selects the Eastern District of New York.

[18] Rule 1(f)(2) provides that a judge can deny a party's motion to change a courthouse assignment on grounds that the case has been assigned by the Chief Judge under Rule 2(e).

Because the Court has found the action was filed in the correct forum, it need not address Plaintiff's argument that the Offer Letter incorporates the Equity Grant Agreement by reference.

## III. Defendants Are Not Entitled to a Sanctions Hearing to Award Costs and Fees Incurred in Bringing this Motion to Dismiss.

Finally, Defendants move for the Court to hold a sanctions hearing to award Defendants court costs and attorneys' fees incurred in filing the motion to dismiss because Plaintiff "brought this action in the wrong forum despite being unquestionably aware of the forum selection clauses in the underlying Agreements." Defs.' Mem. 11. As the action was not filed in the wrong forum, the Court need not address this motion. *Gambino v. Vill. of Freeport*, No. 20-CV-3216, 2022 WL 138065, at *6 (E.D.N.Y. Jan. 14, 2022) (declining sanctions because party did not prevail).

## CONCLUSION

For the reasons set forth above, this Court recommends that Defendants' motion to dismiss be DENIED, and that Defendants' request for sanctions be DENIED.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir.

2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
March 14, 2024